78 So.2d 619

### ALABAMA GREAT SOUTHERN RAILROAD CO.

v.

### Robert M. GAMBRELL.

### 6 Div. 754.

Supreme Court of Alabama.

March 10, 1955.

Cabaniss & Johnston, Leigh M. Clark and E. T. Brown, Jr., Birmingham, for appellant.

Hare, Wynn & Newell and Frank L. Parsons, Birmingham, for appellee.

STAKELY, Justice.

This is an appeal by defendant from a judgment of the trial court granting plaintiff's motion for a new trial. The action was under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the plea was in short by consent. The trial resulted in a judgment on a verdict in favor of the plaintiff and against the defendant for the sum of $15,000. The trial court did not specify the grounds of the motion furnishing the basis of its action but it did specify that its action was not based on grounds numbered, respectively, 8, 9, 10, 11, 12, 15, 42, 43 and 44.

Plaintiff was a fireman on south bound train No. 37 that collided with north bound train No. 48 at Woodstock, Alabama, on November 25, 1951. The track was that

of defendant and both trains were being operated by agents, servants and employees of the defendant. Just before the collision the plaintiff jumped from the engine of the train and was injured. It is conceded that he was entitled to have his case submitted to the jury. There was no contention that he was guilty of contributory negligence.

Ground 8 of the motion for a new trial is, "because the verdict of the jury for the plaintiff is inadequate."

Ground 9 of the motion for a new trial is, "because the verdict of the jury is contrary to the great weight of the evidence as to the extent of the damage sustained by the plaintiff."

Ground 10 of the motion for a new trial is, "because the verdict of the jury is so inadequate as to show on its face that it is the product of prejudice or improper conduct of defendant's counsel."

■ There were 47 grounds on which the motion for a new trial was based. Since the court granted the motion for a new trial, the action of the court is sustainable if there was any proper ground in the motion, regardless of whether the ruling may have been rested on an improper ground. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224. From our examination of the brief of appellee we do not think it necessary to discuss each ground of the motion since that would unduly prolong the opinion. Rather it seems to us to be appropriate to consider those grounds which are stressed in brief by the appellee as being grounds adequate to support the ruling of the court. In considering these grounds we see no good reason to go into great detail because these grounds cover many pages of the record and constitute a running fight between counsel for the plaintiff and counsel for the defendant practically throughout the trial. Before coming to a statement of the grounds to be considered it is well to remember that the court expressly specified that its action was not based on certain specifically numbered grounds. In other words, in excepting Ground 8 the court held that it was not

acting because the verdict of the jury was inadequate. In excepting Ground 9 the court held that it was not acting because the verdict of the jury was contrary to the weight of the evidence as to the extent of the damages suffered by the plaintiff. In excepting Ground 10 the court held that the verdict was not so inadequate as to show on its face that it was the product of prejudice or improper conduct of defendant's counsel.

■ In reviewing this case we do so with the thought that both counsel for the plaintiff and counsel for the defendant are able attorneys each doing his best to represent his client. As was said by Justice Gardner in Arant v. State, 232 Ala. 275, 167 So. 540, 544, "we must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair." To put it a little differently, it is expected that counsel will strike hard blows in behalf of his client but, of course, the blows must not be foul blows. Then, too, we must not lose sight of the fact that litigation is to determine the rights of the parties to the suit and that is the matter of paramount importance notwithstanding that we may disapprove of the method pursued in argument. Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So. 2d 714. Furthermore statements or argument of counsel which are provoked or producted by statements or arguments of opposing counsel can furnish no ground for complaint or corrective action. Tea Java Coffee Co. v. Saxon China Co., 207 Ala. 33, 91 So. 885; Alabama Power Co. v. Bowers, 252 Ala. 49, 39 So.2d 402.

■ In matters of this kind we put great stress on the action of the lower court because the court has an opportunity for observation which the appellate court does not have. But in the present instance the court expressly held that the verdict was not inadequate, that the weight of the evidence was not against the adequacy of the verdict and that the verdict did not show on its face bias or prejudice on the part of the jury. It is argued, however, that the court has inherent power to grant a new trial on account of misconduct in

its presence without regard to the probable effect upon the verdict and further that the court's order as a matter of law amounts to a holding that the improper conduct probably affected the amount of the verdict adversely to the plaintiff. The plain language of the court, however, shows that an adequate verdict has been returned in the opinion of the court. If this be true, should we disregard the rights of the parties to the cause? The fact that the verdict is not unjust is a material if not a decisive factor in determining whether the new trial should be granted. Alabama Power Co. v. Bowers, supra; American Railway Express Co. v. Reid, 216 Ala. 479, 113 So. 507; Mobile Light & R. Co. v. Gallasch, 210 Ala. 219, 97 So. 733.

■ There are other considerations which should be kept in mind in deciding the action to be taken by us. In every instance where prejudicial conduct was claimed, the court took repressive action and expressly instructed the jury not to consider the words or attitude of counsel. Often we have held that such action on the part of the court removes the harm. Smith v. Clemmons, 216 Ala. 52, 112 So. 442; Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840; Birmingham Electric Co. v. Latham, 249 Ala. 592, 32 So.2d 515; Alabama Great Southern R. Co. v. Swain, supra. At a number of points in the course of the trial counsel for the plaintiff stated that undoubtedly a motion for a mistrial would lie but that he would not make the motion. In fact at no stage in the trial or before the case was submitted to the jury was there any motion for a mistrial. This seems to us to be a speculation on the verdict of the jury. If there was prejudicial conduct counsel should have insisted on a mistrial and not submitted the case to the jury and then seek to set the verdict aside because of prejudicial conduct, " 'unless the argument was "so grossly improper and highly prejudicial, that its evil influence and effect could not be eradicated from the minds of the jury by any admonition from the trial judge." ' ". National Biscuit Co. v. Wilson, 256 Ala. 241, 54 So.2d 492, 497.

This brings us to a consideration of the specific grounds which are alleged to amount to prejudicial conduct. As stated, we shall not undertake to go into these matters in great detail but will try to state them as simply as possible.

■ It appears that counsel for the plaintiff not only represents the plaintiff in the instant case but also represents the plaintiff in a suit brought by the widow and administratrix of the estate of P. G. Powers, deceased. P. G. Powers was the engineer who was operating the train at the time of the disaster when Robert M. Gambrell, the fireman on the engine in the instant case, was forced to jump. Counsel for the defendant claimed inconsistency in the position of the plaintiff's attorney in these two cases, since in the Gambrell case P. G. Powers was claimed to be negligent in running through a red signal, while in the Powers case such action could have a damaging effect. It is insisted that by this position, plaintiff's counsel was subjected to a charge of insincerity. In the course of the trial in the instant case counsel for the plaintiff later undertook to show that the accident was not the result of any failure on the part of P. G. Powers, the engineer, but rather was the result of mechanical failure of appliances of the railroad. We can understand the tactics and position of both attorneys and again we say that each was trying to represent his own client as best he could. We do not consider that this conduct or line of discussion was so prejudicial as to bring about the setting aside of the verdict.

■ Another group of remarks of counsel for the defendant which is criticized grew out of testimony of Dr. Terhune. Dr. Terhune was summoned as a witness for the plaintiff and waited at the court for a considerable time before he was called as a witness. The plaintiff then decided not to use him as a witness and so announced. Defendant's counsel felt that the defendant was being put in a hard position because he wanted to use Dr. Terhune as a witness at a more appropriate point in the trial and yet did not want to keep Dr. Terhune waiting around the court room.

This led to heated words between counsel. Dr. Terhune was then called to the witness stand by the defendant and in the course of his testimony he testified that Robert M. Gambrell, the plaintiff in the instant case, told him that he had received advice from friends not to go back to work until there had been a disposition of the instant case. Now we are not undertaking to say whether Dr. Terhune told the truth or not. Even if this placed counsel for the plaintiff in a position of embarrassment we cannot understand why defendant's counsel could not comment on this situation. What we mean to say is that the evidence produced the controversy and it was not produced by counsel for the defendant. In this connection it is well to point out that counsel for the defendant used no epithets. He made no exaggerated statements. He merely invited the attention of the jury to the evidence which had come from the witness stand.

 In final argument counsel for the defendant said: "A guilty conscience fleeth where no man pursueth." Objection was made to this statement. The court sustained the objection and instructed the jury that "for an attorney to say what the motive of another attorney is and what is in his mind is improper." As we have shown earlier in the opinion, in the heat of a trial attorneys must not be held too strictly accountable for their words. All our cases recognize that a considerable degree of latitude is allowed in argument. City of Birmingham v. Bowen, 254 Ala. 41, 47 So. 2d 174; Jones v. Colvard, 215 Ala. 216, 109 So. 877. Certainly in the present situation after the instructions to the jury and where there was no motion for a mistrial, there was no ground here on which to set aside the verdict of the jury. Authorities supra.

█ In the course of the trial counsel for the plaintiff in substance said that counsel for defendant had intimated that counsel for plaintiff advised the plaintiff not to go back to work and that while he was asking for $100,000, he was hoping to get $50,000. Counsel for defendant thereupon said:

"I am not saying that he asked for $100,000.00. I have never said: he hopes to get $50,000.00. I don't think he hopes to get that much. I don't know he is hoping to get any more than the job, the amount of loss of time, of $5,000.00, and a few thousand * * * and $10,000.00 for the total damages."

It is argued that the criticized remarks of defendant's counsel are comparable to the objectionable remarks of counsel in Birmingham Railway Light & Power Co. v. Drennen, 175 Ala. 338, 58 So. 876. In that case counsel for the plaintiff stated that if defendant's counsel was on the jury trying this case he would return a verdict in favor of the plaintiff in a large amount. Upon a careful consideration of the matter we do not think that the Drennen case is apt authority here. A study of the record leads us to think that while the remark complained of in the Drennen case was not provoked by complaining counsel, the remark complained of here was provoked by complaining counsel. In the Drennen case the remark complained of was a statement made as a fact of which there was no evidence. In the instant case the remark complained of was not a statement of a fact. In the Drennen case the court did not take prompt and decisive action to eradicate the effect of the remark complained of. In the instant case the court did take prompt and decisive action to eradicate the effect of the remark complained of. The court stated to the jury that it would be highly improper for them to consider the remark complained of. In the Drennen case the court did not exclude the argument complained of. In the instant case the court told the jury that it would be highly improper for them to consider any inferences to be drawn from the remark complained of. In the Drennen case the ramark complained of was made after complaining counsel had concluded his argument and had no adequate opportunity to reply. In the instant case the remark complained of was made at a time when complaining counsel had an opportunity to reply and did in fact reply. The Drennen case has been referred to in a number of cases in which the court seems

to hold in one case that the remark was ineradicably prejudicial, Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116, and in another case where the remark was within the category of eradicable remarks or arguments, Most Worshipful Grand Lodge, etc. v. Callier, 224 Ala. 364, 140 So. 557. We find it unnecessary to go through the various cases which refer to the Drennen case and it is sufficient to say that in American Railway Express Co. v. Reid, 216 Ala. 479, 113 So. 507, 512, Mr. Justice Bouldin, speaking for the court in referring to the Drennen case, said:

"In Birmingham R. L. & P. Co. v. Drennen, also cited in the Gonzalez Case [Birmingham Ry., Light & Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 80], objection to the argument was sustained. No motion to exclude was made. The court failed to take further action to eradicate the harmful effect. Held not reviewable on main appeal 'for the reason that his ruling, as far as invoked on the main trial, was in favor of appellant.' After full review of cases the cause was reversed for failure to grant a new trial, because of the improper argument. The failure of the court to take prompt and decisive action to eradicate the bad impression is the basis of the decision."

It is worthy of note that in Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598, 603, the court used almost the identical language the court used in the instant case in excluding from consideration of the jury the remarks of counsel and said:

"Nevertheless, from a careful reading of this record we are not persuaded that the argument was so improper and highly prejudicial as that the prompt action of the court aforesaid did not fully eradicate whatever evil effect, if any, it might have had on the jury. So considered, we must hold that no error attended the overruling of the motion for a mistrial.

"What we have said with reference to the last proposition of error is equally applicable to the allegations made in the motion for a new trial of the cumulative effect of improper statements of plaintiff's counsel producing an atmosphere of bias and prejudice. We find no such bias or prejudice and this ground of the motion for a new trial was likewise untenable."

Under all the circumstances which we have recited in connection with the case at bar we do not believe that the court was justified on this ground in setting aside the verdict of the jury.

■ In the argument of defendant's counsel to the jury in answer to a question from plaintiff's counsel as to whether Mr. Gambrell, the plaintiff, was a malingerer, counsel for the defendant said: "I think he is a good man, an honorable man and a fair man. I think he is a man that would have gone back to work when the doctor told him but for the fact that he was being * * *." Counsel for the defendant then said: "That he got legal advice." Counsel for the plaintiff then said: "Is your argument but for the fact he got legal advice," to which defendant's counsel answered, "that is right." There was an objection by defendant's counsel that the argument was highly improper, to which the plaintiff's counsel replied, "Well it is based absolutely on the evidence."

The court then said, "Gentlemen, let me rule. Gentlemen, I explain to you that when a lawyer argues any matter that is not in evidence or draws any inference that is not a reasonable inference, don't you consider it."

As a matter of fact Dr. Terhune testified in reference to the plaintiff as follows: "I asked him just why he did not want to go back to work at that time and he said that he felt that he would not until his case was settled. And that he had been advised by friends not to go back to work until his case was settled."

The insistence here is that Dr. Terhune at no point testified that the lawyers for the plaintiff advised him not to go back to work until the case was settled, but

merely that his friends had so advised him. Under all the circumstances of the case, including the admonition of the court that the jury was not to consider anything not in the evidence, we feel that there is no room for complaint here, especially in view of the fact that there was no motion for a mistrial. Authorities supra.

In going through the briefs we find the intimation that this court was in error in its statement of principle in Louisville & N. R. Co. v. Steel, 257 Ala. 474, 59 So.2d 664. Since the writer of the opinion in Louisville & N. R. Co. v. Steel is the writer of this opinion, we are glad to have this matter called to our attention. The case of Louisville & N. R. Co. v. Steel was an action brought under the Federal Employers' Liability Act and, therefore, cases such as Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591, and other cases cited in connection therewith appear to be inapt because they are cases dealing with the Workmen's Compensation Act.

 In Southern Railway Co. v. Peters, 194 Ala. 94, 69 So. 611, it was expressly held that an injured employee suing under the Federal Employers' Liability Act for personal injury is entitled to recover diminished earning capacity. See also Hines v. Wimbish, 204 Ala. 350, 85 So. 765. In Bankers' Mortg. Bond Co. v. Sproull, 220 Ala. 245, 124 So. 907, which was an action in tort, it was said that the plaintiff may recover for the impairment of his earning capacity in estimating the amount of an award for prospective damages due to impaired earning capacity. It is proper to consider plaintiff's expectancy of life and the present value of his yearly income equivalent to the probable reduction of plaintiff's earnings. 25 C.J.S., Damages, § 87, p. 626. We call attention to the following cases which hold that mortality tables are admissible in evidence in an action for damages in connection with evidence tending to show decreased earning capacity on the question of probable life expectancy where the injury is permanent. Louisville & Nashville R. Co. v. Carter, 195 Ala. 382, 70 So. 655; Birmingham Ry. Light &

Power Co. v. Wright, 153 Ala. 99, 44 So. 1037; 15 Am.Jur. 779.

It results from what has been said that the judgment of the trial court granting motion for a new trial is reversed and one here rendered reinstating the verdict of the jury and the judgment thereon in favor of the plaintiff and against the defendant.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.